**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dolores M Silva, | No. CV-17-02258-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Dolores Silva seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits and supplemental security income under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because Plaintiff has not shown that the administrative law judge's ("ALJ") decision is unsupported by substantial evidence or based on reversible legal error, the Court will affirm.

## I.      Background.

Plaintiff is a 60 year old female who previously worked as a housekeeping cleaner. A.R. 52, 209. Plaintiff applied for disability insurance benefits and supplemental security income on November 19, 2013, alleging disability beginning November 2, 2013. A.R. 209-25. On February 24, 2016, Plaintiff testified at a hearing before the ALJ. A.R. 42-54. A vocational expert also testified. *Id.* On March 24, 2016, the ALJ issued a decision finding that Plaintiff is not disabled within the meaning of the Social Security

Act. A.R. 20-35. This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on May 12, 2017. A.R. 1-3.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.*

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at

step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) she is not currently working, (2) she has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") prevents her performance of any past relevant work. If the claimant meets her burden through step three, the Commissioner must find her disabled. If the inquiry proceeds to step four and the claimant shows that she is incapable of performing past relevant work, the Commissioner must show in the fifth step that the claimant is capable of other work suitable for her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018, and has not engaged in substantial gainful activity since November 2, 2013. A.R. 23. At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus, obesity, and degenerative disc disease of the lumbar spine. *Id.* The ALJ also noted the following medically determinable but non-severe impairments: hypertension, hyperlipidemia, gastroesophageal reflux disease, dizziness, vertigo, diabetic retinopathy, depressive disorder, and anxiety disorder. A.R. 23-26. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. A.R. 26. At step four, the ALJ found that Plaintiff has the RFC to perform the full range of light work and is able to perform her past relevant work as a housekeeping cleaner. A.R. 27-34.

**IV.  Analysis.**

Plaintiff argues that the ALJ erred by rejecting her symptom testimony, the opinion of her treating physician, Dr. Kenneth Smith, and the opinion of an agency examining physician, Dr. Melanie Alarcio. Doc. 16.

**A.  Plaintiff's Symptom Testimony.**

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical

evidence of an impairment that could reasonably be expected to produce the alleged symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Plaintiff testified that she stopped working in November 2013 because she "was unable to stand the pain on [her] back." A.R. 46. She testified that she has pain in her back, leg, waist, and neck. A.R. 49. She stated that she takes two medications, which calm the pain "to a certain point," and she stopped going to physical therapy because she "was in a lot of pain afterwards." A.R. 46-47. Her impairments cause dizziness, and she has found no treatment that helps the dizziness. A.R. 47-48. On a typical day she gets up, grooms herself, tries to prepare breakfast and do some chores, and then rests until she can stand up and try to do something again. A.R. 48. She checks her blood-sugar level three times per day, and the level is never steady. *Id.* She can sit "maybe about half an hour" at a time, stand "[m]aybe 30, 40 minutes" at a time, and lift "probably under ten pounds." A.R. 49-50. She uses a cane "[a]ll the time" and needs to lie down for about 30 to 40 minutes after she sits or stands for a long time. A.R. 50-51. Plaintiff takes medication for her depression, anxiety, and panic attacks, "feel[s] like doing nothing," sometimes sleeps a lot or has trouble sleeping, loses her appetite, and does not "feel the desire to continue living." A.R. 50-51.

In function reports from January and June 2014, Plaintiff reported dizziness, fatigue, trouble sleeping, and pain in her arms, hips, and back. A.R. 266-74, 294-302. In January she stated that she prepares "sandwiches, rice, beans, complete meals" on a daily basis with someone's help and it takes about 30 minutes, but in June she reported that she

does not prepare her own meals.  A.R. 268, 296.  Plaintiff also reported in January that someone accompanies her to shop for groceries once or twice per week for about an hour, but in June she reported that she does not shop and leaves the house only for doctors' appointments.  A.R. 269-70, 297.  She sews, watches TV, and reads, but sewing has become difficult due to arm pain.  A.R. 270, 298.  She reported that she can walk about one block before needing to rest for about 20 minutes.  A.R. 271, 299.  She did not describe using a cane in either report.  A.R. 272, 300.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.  A.R. 28.  She provided the following reasons: (1) the medical evidence does not "fully support" Plaintiff's allegations, (2) certain medical evidence is inconsistent with Plaintiff's allegations, (3) Plaintiff's own inconsistent statements cast doubt on her credibility, (4) Plaintiff received "conservative and routine" treatment, (5) Plaintiff "exerted possible poor effort" at the consultative examination, and (6) Plaintiff failed to attend physical therapy to improve her condition.  A.R. 28-30.  The ALJ did not find that Plaintiff was malingering.

Plaintiff argues that the ALJ's reasons do not satisfy the clear-and-convincing standard because each reason is either legally insufficient, overly general, or based on speculation.  Doc. 16 at 20-23.

### 1.    The ALJ's First and Second Reasons.

The Ninth Circuit has made clear that if "the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *Garrison v. Colvin*, 759 F.3d 995, 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (a claimant need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof")).  But an ALJ may rely on

contradictory medical evidence to discredit symptom testimony, so long as she "make[s] specific findings justifying [her] decision." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

The ALJ's statement that the medical evidence does not "fully support" the alleged severity of Plaintiff's symptoms is not a clear and convincing reason to discredit Plaintiff's testimony. *Burnell*, 947 F.2d at 345. Plaintiff asserts that the ALJ made this statement and "then just launched into a discussion of the medical evidence, but with no tie-in between any specific evidence and any particular symptom." Doc. 16 at 22. The Court does not entirely agree with this characterization.

With regard to Plaintiff's testimony concerning her back pain, the ALJ cited lumbosacral x-rays from February 2011 showing only "mild" degenerative changes in the lumbar spine (citing A.R. 367, 569), a March 2011 CT scan of the lumbar spine showing no canal stenosis (citing A.R. 369), a February 2011 bone density study showing no abnormalities (A.R. 569), a doctor's note in February 2011 that Plaintiff's joints "revealed mild compression tenderness about the MCP, PIP, and wrists" (citing A.R. 569), and a February 2015 MRI showing "mild left paracentral L4-5 disc protrusion slightly effacing the L5 nerve root on the left, right lateral L5-S1 disc protrusion with some foraminal stenosis, and prominent facet arthropathy at L5-S1" (citing A.R. 730). A.R. 28. The ALJ concluded that although Plaintiff "is likely to have some pain and restrictions, there is no evidence of any severe stenosis, nerve root impingement, or other significant findings or foraminal narrowing to cause the pain and restrictions alleged." A.R. 28. But this is the type of showing that a claimant is not required to make. As noted above, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *See Garrison*, 759 F.3d at 1014.

The evidence cited by the ALJ does not appear to contradict any of Plaintiff's testimony, particularly where most of the records predate Plaintiff's alleged disability onset date. More importantly, the ALJ's discussion fails to provide the type of specific explanation necessary to support such a finding. *See Brown-Hunter*, 806 F.3d at 493. This is not a clear and convincing reason to reject Plaintiff's testimony regarding her back pain.

The ALJ discredited Plaintiff's "allegations of complete prostration" based on "multiple clinical examinations" showing no "neurological deficits, weakness, or other manifestations, which would be supportive of" the allegations. A.R. 29 (citing A.R. 535, 629, 647, 685). But the ALJ had already determined that Plaintiff's medically determinable impairments could reasonably produce this symptom. Plaintiff therefore was not required to substantiate the severity of the symptom with medical evidence. *See Garrison*, 759 F.3d at 1014. Review of Plaintiff's testimony and the records cited by the ALJ does not reveal any obvious contradictions, and the ALJ's opinion fails to identify any. The opinion simply lists medical evidence that is "supportive" of the RFC determination without specifically identifying any inconsistency between something Plaintiff asserted and something in the records. A.R. 29. This is not a clear and convincing reason to reject Plaintiff's testimony regarding fatigue and weakness.

With respect to Plaintiff's dizziness, the ALJ concluded that it was "not substantially supported by the record[,]" and the record "did not include substantive information regarding [her] dizziness outside of [her] subjective complaints." A.R. 29. The ALJ cited a March 2013 duplex scan showing "no evidence of carotid stenosis or occlusion[,] and vertebral flow was antegrade." A.R. 29. The ALJ did not explain why this finding – from months before Plaintiff's disability onset date –contradicts Plaintiff's claim of dizziness.

The ALJ also cited a number of records which she viewed as inconsistent with Plaintiff's reports of dizziness. A.R. 29 (citing A.R. 547, 549, 621, 634, 640, 646, 653). Two of these records are notes from July 2014 visits with Dr. Jasjeet Kaur, each containing the following statement: "Denies, . . . orthostatic dizziness." A.R. 547, 549.

The remaining records, issued between June 2015 and December 2015, come from visits with Dr. Smith and state that Plaintiff was "negative" for dizziness (A.R. 621, 634, 640, 646, 653), although Dr. Smith's treatment notes from other visits during 2013, 2014, and 2015 state that Plaintiff was "positive" for dizziness. (A.R. 425, 433, 438, 461, 466, 628, 678, 684, 690, 701, 707, 718, 724). The Court finds that although there is conflicting evidence regarding Plaintiff's dizziness, the ALJ gave sufficient reasons for discrediting this symptom because the ALJ "identif[ied] what testimony [was] not credible and what evidence undermines" the testimony. *Brown-Hunter*, 806 F.3d at 493. The fact that Plaintiff denied dizziness at multiple appointments during the relevant period is a sufficiently clear and convincing reason to discredit Plaintiff's testimony that she gets dizzy every time she moves her head.

The ALJ's decision next states that "the record shows that [Plaintiff] had no significant limitations from" her diabetes. A.R. 29. In support, the decision cites 121 pages of Dr. Smith's treatment notes as evidence that "[a]t many points in the record [Plaintiff's] diabetes was note[d] as being stable[.]" *Id.* (citing 619-739). The decision also notes that Plaintiff was not always compliant with her medications and treatment, and was "noted as needing further attention to her diabetic control." *Id.* (citing A.R. 534, 570). And Plaintiff "denied neuropathy and foot complications" – common symptoms of diabetes – at a December 2015 appointment with Dr. Kaur. *Id.* (citing A.R. 740). The ALJ acknowledged that Plaintiff's obesity "likely exacerbates her pain," but found that "there is no evidence it is of the severity so as to preclude work." A.R. 30. Although this discussion identifies specific medical evidence in the record, it provides no link between the evidence and Plaintiff's testimony. It is unclear which testimony the ALJ believed was inconsistent with these records. This is not a clear and convincing reason.

The ALJ rejected Plaintiff's testimony that she needed a cane because "there is not consistent evidence showing" the cane is necessary. A.R. 30. The decision notes that Plaintiff did not report cane use in her function reports, Plaintiff "was observed to have

normal gait without the use of any assistive device" at a psychological evaluation two months before she requested the cane, and treatment records consistently state that Plaintiff had normal gait. *Id.* (citing A.R. 300, 494, 535, 580-84, 711, 714, 385-451, 529-53, 619-739). Plaintiff argues that normal gait is not inconsistent with the need for a cane because "a cane could reasonably be used for other reasons, such as weakness in the legs, or lack of feeling in the feet." Doc. 16 at 22. But Plaintiff does not cite support in the record for this proposition, and Plaintiff failed to explain this at the hearing. The ALJ identified a specific inconsistency between Plaintiff's testimony and evidence in the record. The ALJ did not err in rejecting this testimony.

In sum, the Court finds that the ALJ's first and second reasons are insufficient to the extent they simply summarize medical evidence or require Plaintiff to substantiate the severity of her symptoms. But the ALJ adequately identified two clear inconsistencies between Plaintiff's testimony and medical evidence regarding dizziness and cane use. This is a clear and convincing reason.

## 2. The ALJ's Third Reason.

The ALJ found that "the information provided by [Plaintiff] generally may not be entirely reliable" because of two inconsistencies in her statements. A.R. 30. First, Plaintiff stated at the hearing that she does not babysit, but at a July 2014 examination with agency psychologist Jose Abreu, she stated: "I take care of my little grandchild as much as I can[.]" A.R. 46, 499. Second, notes from a February 2015 visit with Dr. Smith indicate that Plaintiff was planning on "leaving the country," but Plaintiff testified at the hearing that she can only sit for about half an hour at a time. A.R. 49, 682. The ALJ reasoned that these statements are inconsistent because "any international travel would require extended sitting." A.R. 30.

With respect to babysitting, Plaintiff argues that the inconsistency is attributable to the two years that separate the statements. Doc. 16 at 22. With respect to international travel, Plaintiff argues that there "is no evidence as to what travel actually occurred, or, if so, what accommodations were used[.]" *Id.* at 22-23. Plaintiff also argues more

generally that ALJ credibility determinations should not "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Id.* at 21 (quoting *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017)). The Court agrees. The fact that Plaintiff reported trying to take care of her grandchild over two years before the hearing does not necessarily contradict Plaintiff's statement at the hearing that she does not babysit. And an indication that Plaintiff was leaving the country, without any information as to whether she in fact left the country or how she traveled, does not contradict Plaintiff's statement that she can sit for about 30 minutes at a time. These two perceived inconsistencies do not constitute clear and convincing reasons to generally distrust Plaintiff's testimony.

The ALJ also suggested that Plaintiff's statement that she took care of her grandchild as much as she could was inconsistent with her symptom testimony because Plaintiff's "ability to provide care for a young individual demonstrated that she was able to function at a higher level than alleged." A.R. 30. But an ALJ may discredit a claimant's symptom testimony on this basis only if the claimant's daily activities contradict her claimed limitations, or the claimant "spend[s] a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Reddick*, 157 F.3d at 722. One note in a medical record that Plaintiff takes care of her grandchild "as much as [she] can" does not indicate that Plaintiff spends a substantial part of her day engaged in this activity, and does not give enough information to meaningfully determine that the activity conflicts with Plaintiff's alleged limitations. This is not a clear and convincing reason.

### 3.    The ALJ's Fourth Reason.

The ALJ noted in one sentence that Plaintiff's "treatment was conservative and routine." A.R. 30. In some circumstances, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). But the ALJ provided no explanation to

support this assertion. The record contains evidence that Plaintiff took about a dozen prescription medications including narcotics for her pain, antidepressants, and anti-anxiety medication; frequently visited her primary care physician; saw a diabetes specialist, an ophthalmologist, a pain management clinic, and a neurologist; had frequent laboratory testing and imaging; and received laser eye treatment and some physical therapy. *See, e.g.*, A.R. 354-55, 692-93, 479-84, 506-11, 522-26, 529-50, 580-84, 585-618, 619-726, 740-49. The ALJ did not explain why she considered this treatment to be conservative or what more aggressive treatment would be expected for someone with Plaintiff's impairments. This is not a clear and convincing reason because the ALJ provided no explanation to allow the Court to meaningfully evaluate it. *See Brown-Hunter*, 806 F.3d at 495 ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

### 4. The ALJ's Fifth Reason.

The ALJ noted in one sentence that "the findings during the physical consultative examination [with agency physician Dr. Alarcio] were so inconsistent that there were concerns that the claimant exerted possible poor effort[.]" A.R. 30 (citing A.R. 486-92). The ALJ did not find that Plaintiff was malingering. This observation is not a clear and convincing reason to discredit Plaintiff's symptom testimony, but it may be relevant to the ALJ's decision to discredit Dr. Alarcio's opinion, discussed later in this Order.

### 5. The ALJ's Sixth Reason.

Finally, the ALJ noted that Plaintiff "had physical therapy for her back, but she did not attend multiple times [A.R. 585-618]. In fact, she was discharged due to non-compliance [A.R. 586]. Her condition would have likely improved had she made an effort to address her conditions more actively and attentively." A.R. 30.

In evaluating a claimant's credibility, an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

treatment." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)).

The record reflects that Plaintiff did not attend multiple scheduled physical therapy appointments and was ultimately discharged "due to non-compliance." A.R. 586. Plaintiff attended physical therapy five times between July and September 2015. A.R. 585-618. Plaintiff cancelled, rescheduled, or simply failed to attend 11 appointments. *Id.* She cancelled due to "illness" twice and because of "physician appointments" twice. A.R. 587, 598, 607, 608. At the hearing, Plaintiff explained that she missed physical therapy sessions because she "was in a lot of pain afterwards." A.R. 47.

Notes from her physical therapy sessions indicate that Plaintiff presented with "severely limited" range of motion, moderate to severe antalgic gait, and tenderness at level two ("pain with wincing") or three ("wincing and withdrawal") in her erector spinae, gluteus maximus, and quadratus lumborum. *See* A.R. 589, 612. At her first visit, the physical therapist opined that Plaintiff exhibited "fair understanding and performance of the" activities and instructions, and "[o]verall rehabilitation potential is fair." A.R. 613. Plaintiff was recommended to attend three visits per week for an expected six weeks. A.R. 614. At her second visit, Plaintiff reported that she had "been trying some of the exercises at home," but was "still having a lot of pain throughout her back." A.R. 602. Various notes indicate that Plaintiff "responded well" to certain treatments, "demonstrate[d] motivation," "self-limit[ed] effort due to fear of re-injury," "tolerated [treatment] well," and "reported a decrease of pain 3/10" after treatment. A.R. 590, 594, 600, 603. Her discharge summary indicates that Plaintiff "reported minimal improvements in 5 sessions[,]" her progress was "significantly limited by [complaints of] pain and very low activity tolerance[,]" and she "exhibits a poor prognosis at time of discharge." A.R. 585-86.

The Court cannot conclude based on this record that the ALJ erred in finding that Plaintiff inadequately explained her failure to follow this course of treatment. Although

it is not certain that Plaintiff would have improved given that her prognosis at the outset was only "fair," treatment notes reflect that Plaintiff was improving to a limited extent and this might have continued if Plaintiff had followed the therapy treatment plan. As noted above, where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas*, 278 F.3d at 954.

### 6. Conclusion.

The ALJ gave clear and convincing reasons to discredit Plaintiff's testimony that she requires a cane and gets dizzy every time she moves her head. And the ALJ reasonably concluded that Plaintiff's credibility was undermined by her failure to follow the prescribed physical therapy treatment for her chronic pain and mobility issues. The ALJ's remaining reasons were either legal error or unsupported by the record.

Despite the ALJ's reliance on these improper reasons, the Court finds that the errors are harmless because the ALJ provided clear and convincing reasons to support the credibility determination, and the determination remains supported by substantial evidence. Plaintiff mainly alleged disability on the basis of dizziness, chronic pain, immobility, and gait issues. The ALJ identified clear and convincing reasons to discredit Plaintiff's testimony regarding each of these symptoms, and to doubt her overall credibility. The ALJ therefore did not err in finding that Plaintiff's testimony regarding the severity of her symptoms was not entirely credible.

### B. Medical Source Evidence.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings," *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected for "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (internal quotations and citation omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

/ / /

/ / /

### 1. Dr. Smith.

Dr. Smith has been Plaintiff's treating primary care physician for more than 30 years. *See* A.R. 579. On March 17, 2014, he opined:

> Ms. Silva has not been able to work due to complex and multiple health issues. She currently has uncontrolled diabetes mellitus which has caused a long list of health conditions that have made it difficult to work. Currently she has:
>
> > 1) Diabetes Mellitus-uncontrolled
> > 2) Diabetic Retinopathy affecting her vision
> > 3) Diabetic Neuropathy causing severe numbness to her legs and feet
> > 4) Chronic pain to her arms, neck, shoulders, legs and lumbar spine
> > 5) Recurrent, persistent dizziness
> > 6) Chronic and persistent fatigue
> > 7) Depression that is uncontrolled, persistent and major
> > 8) Chronic uncontrolled and persistent anxiety
> > 9) Chronic recurrent cephalgia with headaches
> > 10) Chronic gastroesophageal reflux disease
>
> Due to this present list of problems, she has been unable to work. In addition, I would like to express two major points. First, she has been working with some of these conditions for some time, has continued to be a very loyal employee. Second, at this time the combination of all of these health issues have rendered her unable to work, and it could actually be harmful to her health to work at this time. I do consider her to be disabled and unable to work due to the combined health issues.

A.R. 456-57.

On November 2, 2015, Dr. Smith opined:

> [Plaintiff] has uncontrolled Diabetes Mellitus with complications of diabetic retinopathy, hypertension and neuropathy. In addition she suffers from severe, chronic recurrent and debilitating vertigo. This vertigo has been treated, yet is persistent and disabling. She also suffers from severe back pain that is debilitating and requiring the use of chronic narcotic, and is under the care of a pain specialist. She suffers from chronic anxiety and depression which require the use of ongoing medication, which causes multiple side effects.

A.R. 579.

Dr. Smith also completed functional assessment questionnaires in September 2015 and January 2016. *See* A.R. 575-76, 752-53. He opined that Plaintiff can sit for less than two hours in an eight-hour workday; stand or walk for less than two hours; carry less than ten pounds; needs to alternate positions every 21 to 45 minutes; needs to rest between position changes; has "moderately severe" (off-task 16-20% of a workday) pain, fatigue, weakness, dizziness, neuropathy, and anxiety; and has side effects from her medications, which include malaise, nausea, confusion, fatigue, dizziness, and forgetfulness. *Id.*

The ALJ found that Dr. Smith's opinions are contradicted by the opinions of the consulting agency physicians who opined that Plaintiff can perform medium work with some additional limitations, and afforded Dr. Smith's opinions little weight. A.R. 31. The ALJ reasoned that (1) notes from Plaintiff's visits to the neurologist and Plaintiff's own reports contradict Dr. Smith's findings regarding neuropathy, (2) the opinion of Plaintiff's ophthalmologist contradicts Dr. Smith's findings regarding retinopathy, (3) Plaintiff's hypertension was "assessed as stable and under good control" in contrast to Dr. Smith's findings, (4) Dr. Smith's "own reports fail to reveal the type of significant clinical abnormalities one would expect if the claimant were in fact disabled," (5) Dr. Smith "apparently relied quite heavily on the subjective report of symptoms and limitations provided" by Plaintiff, (6) Dr. Smith is a general practitioner, and (7) the ALJ need not consider Dr. Smith's conclusions that Plaintiff is "disabled" or "unable to work." A.R. 31-32.

Plaintiff argues that each reason is error or unsupported by the record. Doc. 16 at 11-17. Defendant argues that the ALJ correctly weighed the competing opinions of various doctors and gave sufficient reasons for her conclusions. Doc. 21 at 7-11.

### a. Neuropathy.

The ALJ concluded that Dr. Smith's finding of neuropathy causing severe numbness in Plaintiff's legs and feet was contradicted by Plaintiff's neurology records "showing normal sensation and strength in her legs." A.R. 31 (citing A.R. 505-21). Plaintiff asserts that these records contain no such indication. Doc. 16 at 11. The

records, from appointments with Dr. Jason Reinhart from June to August 2014, appear to be focused on Plaintiff's dizziness and occipital neuralgia. But they note that Plaintiff had normal muscle bulk and tone, normal base and stride, stable gait, symmetrical normoactive reflexes with "toes downgoing," and intact "pinprick, vibratory, [and] proprioceptive sensation" on both sides. *E.g.*, A.R. 510. Although these records do not specifically address Plaintiff's neuropathy, they do provide "relevant evidence that a reasonable person might accept as adequate to support" the ALJ's finding of an inconsistency in the record. *Orn*, 495 F.3d at 630.

The ALJ also noted that Plaintiff's "neurological exams were normal." A.R. 32 (citing A.R. 385-451, 507). Plaintiff argues that the cited records either do not contain such observations or provide only general observations without reference to Plaintiff's legs and feet. Doc. 24 at 3. Many of the cited records are Dr. Smith's notes from before Plaintiff's disability onset date. *See* A.R. 385-422. Each of Dr. Smith's records from after the onset date notes numbness in her extremities, and only one indicates a "normal" neurological exam. *E.g.*, 425 (numbness in extremities but normal neurological exam), 433 (numbness in extremities and neuritis); 438 (numbness in extremities and hypoesthesia). The other record cited by the ALJ is one of Dr. Reinhart's notes discussed in the preceding paragraph. *See* A.R. 507 (normal base and stride; symmetrical normoactive reflexes). Given that the ALJ cited just one record from Dr. Smith stating that the neurological exam was normal, and even that record noted that Plaintiff had numbness in her extremities, the Court cannot conclude that this is a specific and legitimate reason to discredit Dr. Smith's findings regarding neuropathy.

The ALJ also noted that Plaintiff denied having neuropathy. A.R. 31 (citing A.R. 740). The cited record comes from Dr. Kaur and contains the following notation: "Neuropathy/foot complications Denies, numbness/burning of feet." A.R. 740. A substantially identical notation appears in the initial section of each of Dr. Kaur's reports. *See* A.R. 529, 531, 533, 535, 537, 541, 543, 545, 547, 549, 740, 742, 744, 746, 748. Plaintiff argues that "it appears quite likely that these notations, appearing in the same

format in each office note, reflect a computer 'hiccup' rather than individual observation." Doc. 16 at 13 & n.15 (citing *Kantarze v. Comm'r of Soc. Sec. Admin.*, No. CV-16-1675-PHX-DKD, 2017 WL 1684632, at *2 n.2 (D. Ariz. May 3, 2017) ("The Court is not persuaded that the portions of the record noted by the Commissioner's response actually constitute conflicting medical opinions instead of examples of careless use of electronic medical record software.")). Defendant responds that it is "just as likely that, as the ALJ found, these records were legitimate and thus adequately supported the ALJ's decisions to discount Dr. Smith's opinion." Doc. 21 at 9. The Court will not speculate that these notations were unintentional. The unusual punctuation and the notation that Plaintiff "looks at the bottom of feet daily" in the same paragraph make the notes somewhat ambiguous, but the Court cannot deem the ALJ's interpretation unreasonable. These initial paragraphs appear to summarize Plaintiff's reports at each visit, and they indicate that she denied either neuropathy and foot complications, numbness and burning of feet, or both. This is a specific and legitimate reason to find that Dr. Smith's opinion regarding neuropathy is inconsistent with other portions of the record. As noted, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Thomas*, 278 F.3d at 954.

### b. Retinopathy.

The ALJ's decision states that "Dr. Smith noted complications with diabetic retinopathy, which contradict findings of a treating ophthalmologist showing no limitations due to her vision[.]" A.R. 32 (citing A.R. 571-72). Dr. Smith opined that Plaintiff suffers from "[d]iabetic retinopathy affecting her vision," but he did not list retinopathy as an impairment that affects Plaintiff's ability on his functional assessments. A.R. 456, 575, 752. The ALJ's decision cites a visual assessment completed by Plaintiff's ophthalmologist, Dr. Ramin Schadlu, which finds that Plaintiff's visual impairments do not limit her ability to perform work-related activities. *See* A.R. 571-72. The Court cannot conclude that this is a legitimate reason to discount Dr. Smith's opinion. The ALJ acknowledged that Plaintiff has retinopathy. *See* A.R. 24. And Dr.

Smith – in agreement with Dr. Schadlu and the ALJ – found no limitations resulting from the impairment.

### c. Hypertension.

The ALJ found it inconsistent that Dr. Smith opined to complications resulting from Plaintiff's hypertension when it was "assessed as stable and under good control." A.R. 32 (citing A.R. 385-451). Dr. Smith stated that Plaintiff "has uncontrolled Diabetes Mellitus with complications of . . . hypertension." A.R. 579. He also noted Plaintiff's hypertension in his treatment records. *See, e.g.*, A.R. 385-451. But in his functional assessments, Dr. Smith did not cite Plaintiff's hypertension as affecting her ability to function. *See* A.R. 575, 752. The records cited by the ALJ are Dr. Smith's own treatment notes, in which he makes various notes regarding Plaintiff's hypertension, including that it is "benign" and "under good control." A.R. 394, 405. Where the fact that Plaintiff has hypertension is undisputed, there is no inconsistency between Dr. Smith's acknowledgement of the hypertension and his opinion that it places no limitation on Plaintiff.

### d. Dr. Smith's Own Reports.

The ALJ found that Dr. Smith's reports do not contain "the type of significant clinical abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness[.]" A.R. 32 (citing A.R. 629, 647, 667, 685). The four pages cited by the ALJ are portions of treatment records from Dr. Smith's office containing the "Physical Exam" section. Next to most categories there is an indication that the exam was "normal." On three of the four exams, there is an abnormal finding with respect to the musculoskeletal category. A.R. 629 (mild pain with motion in cervical spine, muscle spasm and mildly reduced motion in thoracic spine, muscle spasm and moderate pain with motion in lumbar spine), 647 (muscle spasm and moderate pain with motion in lumbar spine), 685 (muscle spasm and mildly reduced motion in cervical and thoracic spine, muscle spasm and moderate pain with motion in lumbar spine, tenderness in shoulders, mild osteoarthritis in both hands). On two exams, there is an

abnormal finding in the psychiatric category. A.R. 647 (anxious), 685 (forgetful and hopelessness). On one exam, there is an abnormal finding in the neurological category. A.R. 629 ("Sensory – stocking hypesthesia"). One exam states "normal" for every category. A.R. 667. This exam was performed by James M. Grepling, PAC, another provider in Dr. Smith's office, when Plaintiff visited complaining of "diarrhea, UTI and abdominal pain." *See* A.R. 664-69. In the musculoskeletal category, the note states "visual overview of all four extremities is normal." A.R. 667. It does not appear that a physical musculoskeletal exam was actually performed at this visit.

The ALJ's interpretation of the record is reasonable. Many of Dr. Smith's treatment records (setting aside the record completed by James Grepling) note normal physical examinations with only mild to moderate symptoms in one or two categories. It was not unreasonable for the ALJ to conclude that these records fail to provide support for Dr. Smith's opinions in the letters and functional assessments that Plaintiff has severe functional limitations due to her impairments. *Thomas*, 278 F.3d at 954. This is a specific and legitimate reason.

### e.    Reliance on Subjective Reports.

The ALJ stated:

> [Dr. Smith] apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Plaintiff's] subjective complaints.

A.R. 31-32.

Generally, a physician's reliance on a claimant's "subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal citations and quotations omitted). But if "a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on

clinical evidence," and "the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

Dr. Smith's treatment records contain his observations, diagnoses, prescriptions, and recommendations, in addition to Plaintiff's self-reports. *See* A.R. 619-739. But, as the ALJ reasonably concluded, the objective portions of these records do not support Dr. Smith's ultimate functional assessments. The Court cannot find that it was error for the ALJ to conclude that Dr. Smith's opined functional limitations must have been "more heavily based on [Plaintiff's] self-reports than on clinical observations." *See Ghanim*, 763 F3d at 1162. Again, where evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas*, 278 F.3d at 954. Because the ALJ properly discredited Plaintiff's symptom testimony, this is a specific and legitimate reason to give less weight to Dr. Smith's opinions.

### f. General Practitioner.

In one sentence, the ALJ stated: "As well, the doctor is not a specialist, but a general practitioner." A.R. 32. Plaintiff argues that the "Ninth Circuit has squarely rejected this rationale." Doc. 16 at 17 (citing *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 n.1 (9th Cir. 2003) ("[T]he primacy of [the treating physician's] opinion derives from his superior *vantage* compared to a non-treating physician, even apart from any superior *credentials*."); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) ("Under general principles of evidence law [the treating physician] is qualified to give a medical opinion as to [the claimant's] mental state as it relates to her physical disability even though [he] is not a psychiatrist.")). Defendant responds that this is a "valid reason to afford [Dr. Smith's] opinion less weight." Doc. 21 at 10 (citing 20 C.F.R. §§ 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."), 416.927(c)(5) (same)).

The Court concludes that this not a specific and legitimate reason to reject the opinion of Plaintiff's treating physician. The ALJ provided no explanation for the statement, and in making the RFC determination, the ALJ assigned the most weight to the agency non-examining physicians, who do not appear to be specialists. *See* A.R. 31. The ALJ was not entitled to reject the opinion of Plaintiff's treating physician simply because he is a general practitioner. *See Ross v. Berryhill*, No. 1:15-CV-01322-BAM, 2017 WL 1273766, at *6 (E.D. Cal. Mar. 17, 2017) ("[T]he fact that Plaintiff's treating physician was not a specialist is not a specific and legitimate reason for discounting that opinion.").

### g.    Ultimate Disability Determination.

The ALJ included boilerplate language stating that she is not required to credit a physician's opinion that a claimant is "disabled" or "unable to work." A.R. 31. This is true, but the ALJ generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c). Because Dr. Smith's opinion contained more than the ultimate conclusion that Plaintiff is disabled, this is not an independent reason to discredit his opinions.

### h.    Conclusion.

The ALJ rejected Dr. Smith's opinion because the record contains evidence that conflicts with his opinion regarding Plaintiff's neuropathy; Dr. Smith's treatment notes – which generally reflect only mild to moderate symptoms – are inconsistent with his assessment of significant functional limitations; and Dr. Smith's functional assessments appear to have relied more heavily on Plaintiff's subjective complaints than on objective medical findings. Although the ALJ's other proffered reasons were not specific and legitimate, the Court concludes that any error is harmless because these three reasons make up the bulk of the ALJ's analysis and are sufficient to support the ALJ's conclusion. The ALJ did more than simply offer conclusions. She set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her]

interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d at 1408. And although the evidence in support of some of the ALJ's findings is fairly debatable, substantial evidence is less than a preponderance. It is evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Orn*, 495 F.3d at 630. The Court concludes that the evidence relied on by the ALJ meets this standard.

### 2.    Dr. Alarcio.

Dr. Alarcio completed a consultative examination of Plaintiff on July 19, 2014. A.R. 486-92. She diagnosed Plaintiff with degenerative disc disease affecting her lumbar spine with radiculopathy, and poorly controlled diabetes with retinopathy and neuropathy. A.R. 489. She opined that Plaintiff could lift less than ten pounds; stand or walk for less than two hours in an eight-hour work day; sit for an unlimited amount of time in a work day; never climb or balance; occasionally stoop, kneel, crouch, crawl, reach, handle, finger, and feel; and cannot complete an eight-hour day or forty-hour work week due to severe fatigue. A.R. 489-92.

During the examination, Dr. Alarcio observed that Plaintiff could not get on and off of the exam table without assistance, had normal gait but "wobbled," had difficulty with heel and toe walking, could not tandem walk, had negative Romberg, and could do a 60% squat "with good effort." A.R. 487-88. She also observed reduced sensation in Plaintiff's left hand, paresthesia in Plaintiff's thighs and feet, and limited range of motion in the lumbar region, shoulders, right hip, right wrist, and left fingers and thumb. A.R. 488-89. Straight leg tests were positive on the right and negative on the left. A.R. 489. Dr. Alarcio also observed a spasm in Plaintiff's lumbar area during the exam. A.R. 489. Dr. Alarcio recommended that Plaintiff use an assistive device for balance, receive "constant medical supervision" for her uncontrolled diabetes, and "have her depression addressed more appropriately." A.R. 490, 492.

The ALJ afforded Dr. Alarcio's opinion "minimal weight." A.R. 31. She reasoned that the findings regarding pain and range of motion are "so inconsistent" with

the remainder of the record that "there were concerns that [Plaintiff] exerted possible poor effort." A.R. 30-31. She found that Dr. Alarcio's opinion of severe fatigue is "not consistent with any other exam" and "was based primarily on [Plaintiff's] own allegations[.]" *Id.* at 31. She also reasoned that Dr. Alarcio's conclusions regarding Plaintiff's gait and neurological symptoms are inconsistent with notes from Plaintiff's neurologist during the same time period. A.R. 29.

The record cannot support the ALJ's inference that Plaintiff exerted poor effort at this examination. Dr. Alarcio's opinion specifically states that Plaintiff gave "good effort." This is not a specific and legitimate reason.

Dr. Alarcio's report details her observations during a physical examination of Plaintiff and describes the basis for each of the functional limitations she assessed. *See* A.R. 487-92. Dr. Alarcio provided the following basis for her finding regarding fatigue: "Apart from her poorly controlled diabetes, she also appears to be suffering from depression, and the medication she is on for this does not seem to be working, and this contributes to her fatigue." A.R. 492. Given that this description does not describe any objective testing performed by Dr. Alarcio on this topic, it was reasonable for the ALJ to conclude that this limitation was based heavily if not entirely on Plaintiff's subjective reports. Because the ALJ properly discredited Plaintiff's subjective reports, this is a specific and legitimate reason.

The ALJ also noted that Dr. Alarcio's opinion, like Dr. Smith's opinion, is inconsistent with treatment notes from Plaintiff's neurologist, Dr. Reinhart. A.R. 29 (citing A.R. 507). Dr. Reinhart's records from August 2014 note that Plaintiff had full motor strength, normal muscle bulk, symmetrical reflexes, and a normal gait. A.R. 507. And his notes from June 2014 state that Plaintiff's pinprick, vibratory, and proprioceptive sensations were "intact" on both sides. A.R. 510. The ALJ reasonably concluded that these findings were inconsistent with Dr. Alarcio's findings of significantly reduced sensation in Plaintiff's hand and paresthesia in her thighs and feet. A.R. 29.

Although the ALJ's description of Dr. Alarcio's report as an "aberration" may have been overstated, the ALJ provided specific and legitimate reasons to discount the opinion. The ALJ's statement that Plaintiff may have exhibited poor effort at this examination, which is not supported by substantial evidence, is harmless in light of the ALJ's provision of other specific and legitimate reasons. The Court will not disturb the ALJ's reasonable weighing of the medical evidence.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall **terminate** this action.

Dated this 9th day of July, 2018.

_____
David G. Campbell
United States District Judge